**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

QUINELL C. MAY, #379798,

        Petitioner,

                                   Case No. 2:05-CV-72558

v.                                 Honorable Gerald E. Rosen
                                   Magistrate Judge R. Steven Whalen

KENNETH ROMANOWSKI,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS**
**CORPUS AND DENYING A CERTIFICATE OF**
**APPEALABILITY & LEAVE TO PROCEED _IN FORMA PAUPERIS_**

      Petitioner, Quinell C. May, is a state inmate currently incarcerated at Standish

Maximum Correctional Facility in Standish, Michigan, where Thomas Birkett is the warden.

At the time Petitioner initially filed his request for habeas relief, he was incarcerated at

Adrian Correctional Facility, in Adrian, Michigan where Kenneth Romanowski was the

warden. Petitioner was convicted on May 9, 2002, of two counts of armed robbery, Mich.

Comp. Laws §750.529, and one count of felony firearm, Mich. Comp. Laws §750.227b in

Wayne County Circuit Court.  He was sentenced on May 24, 2002 to 12½ to 25 years'

imprisonment for the armed robbery conviction and a consecutive mandatory term of

imprisonment for the felony firearm conviction of 2 years.  Petitioner filed a _pro se_ petition

for a writ of habeas corpus under 28 U.S.C. §2254.  For the reasons stated below, the court

will deny the petition.

# I. BACKGROUND

The convictions arose from the armed robbery of Jamar Dodson and Jamal Hailey. The robbers were accused of taking Dodson and Hailey's jackets at gunpoint as the boys were walking to school on January 4, 2001.  Petitioner was later identified by Dodson and Hailey in a photo array as the assailant.  Following Petitioner's conviction, he filed an appeal of right raising the following claims:

I.  The trial court denied defendant May his right to present a defense and abused its discretion by precluding Mr. May from presenting his alibi witness because he had failed to file a timely notice of alibi rather than granting a continuance so that he could file a timely notice and present his alibi witness. U.S. Const. Am VI, XIV; Mich. Const. Art. Sec. 17, 20.

> A.   Mr. May was asserting constitutional rights, had a legitimate reason for asserting those rights, was not negligent, had not caused prior adjournments of trial, and was prejudiced by the refusal of a continuance, and thus the trial court abused its discretion in refusing to grant a continuance.

> B.  Mr. May should be granted a new trial because his attorney was ineffective in failing to file a timely notice of alibi, and if the attorney had filed a timely notice of alibi, Mr. May could have been acquitted.

II.  The trial court denied Mr. May his right to present a defense and abused its discretion by refusing to appoint an eyewitness identification expert for Mr. May because he could not safely proceed to trial without the expert's assistance and the denial of the expert deprived him of a fair trial.  U.S. Const. Am VI, XIV; Mich. Const. Art. Sec. 17.

> A.   The testimony of an eyewitness identification expert was admissible in Mr. May's trial because it was judicially recognized as generally admissible and because it would have assisted the jury in evaluating the evidence.

> B.  Mr. May could not proceed safely to trial without an eyewitness identification expert because the only evidence against him was eyewitness testimony, and jurors are unaware of problems inherent in eyewitness testimony and therefore could not properly evaluate the evidence.

2

C. Mr. May's conviction must be reversed because due to the court's denial of an eyewitness identification expert, he received a fundamentally unfair trial.

III. Mr. May was deprived of a fair and impartial trial due to the prosecutorial misconduct, and the damage of this misconduct could not be reversed with a curative instruction.  U.S. Const. Am XIV; Mich. Const. Art. Sec. 17.

A.  The prosecutor committed prosecutorial misconduct by inquiring into the details of a prior conviction which was used to impeach Mr. May's testimony.

B.  The prosecutor committed misconduct by asking Mr. May to comment on the veracity of prosecution witnesses, including police officers.

C.  The prejudicial effect of the prosecutor's misconduct could not have been eliminated by a curative instruction and caused a miscarriage of justice; the error was not harmless.

*People v. May,* No. 242862, 2004 WL 737491 (Mich. Ct. App. April 6, 2005) (unpublished).  The Michigan Court of Appeals affirmed Petitioner's conviction.  *Id.* Petitioner filed an application for leave to appeal with the Michigan Supreme Court and raised the same issues as those presented before the Michigan Court of Appeals.  *People v. May,* 682 N.W.2d 93 (2004) (table). Petitioner's application for leave was denied in a standard order.  *Id.*   Petitioner now seeks a writ of habeas corpus asserting the same claims raised in the state appellate courts.  Respondent has filed an answer to the petition, asserting that Petitioner's claims do not involve an objectively unreasonable application of clearly established Supreme Court law, are not cognizable, or are procedurally defaulted.

## II.  STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering

3

applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. §2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

4

The Supreme Court explained the proper application of the "contrary to" clause:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases  . . .

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

The Supreme Court held a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409.

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . Under §2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . Rather, that application must also be unreasonable.

*Id.* at 409, 410-11.  *See also Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## III.  DISCUSSION

### A. Alibi Witness

5

### 1.  Present a Complete Defense

Petitioner claims that the trial court erred by adhering to the requirements of Michigan's Notice of Alibi Statute instead of allowing Petitioner a continuance, and thus precluded him from presenting his alibi witness, who was not disclosed until the second morning of trial.  The Michigan Court of Appeals considered Petitioner's claim and rejected it as follows:

> "In determining how to exercise its discretionary power to exclude the testimony of undisclosed witnesses . . .  a district should consider (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting defendant's guilt, and (5) other relevant factors arising out of the circumstances." [*Id.* at 682, quoting *United States v. Myers,* 550 F.2d 1036, 1043 (CA 5, 1977)].

> These factors must be balanced against the purpose behind requiring a defendant to file a notice of alibi; to safeguard against surprise and wrongful use, to allow the prosecutor time to investigate, to protect the public, and for trial efficiency. *Id.* 676 n. 7, n 8.

> *   *   *

> While we find that defendant has submitted arguments to this Court that support his appeal for a new trial, we find this to be a close question.  That stated, on a close question, we cannot hold that the trial court abused its discretion by not allowing the alibi testimony into evidence.  We therefore affirm the decision of the trial court."

*May*, 2004 WL 737491 at *2-3.

Few rights are more fundamental than that of an accused to present witnesses in his own defense.  *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049 (1973).  However, "the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests."   *Taylor v. Illinois*, 484 U.S. 400, 414, 108 S.Ct. 649, 656 (1988).

6

> The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function must also weigh in the balance.

*Id.*, 484 U.S. at 414-15, 108 S.Ct. at 656.

In light of these interests, the Supreme Court has determined that trial courts may constitutionally preclude defendants from offering otherwise relevant evidence if they fail to comply with procedural rules that require notice to be given. *See Michigan v. Lucas*, 500 U.S. 145, 152-53, 111 S.Ct. 1743, 1748 (1991); *Taylor v. Illinois*, *supra*, 484 U.S. at 417, 108 S.Ct. at 657. *See also Chambers v. Mississippi*, *supra* (the accused, just like the state "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." 410 U.S. at 302, 93 S.Ct. at 1049.)

Specifically, with regard to a defendant's failure to provide notice of an alibi, in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893 (1970), the Court concluded that a trial court may constitutionally preclude an accused from calling an alibi witness if he fails to disclose the witness as required by the state's notice-of-alibi rule. The Court observed that "[g]iven the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." *Id.*, 399 U.S. at 81-82, 90 S.Ct. at 1896. The Court explained:

> The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.

*Id.*

7

That is not to say, however, that a trial court's refusal to grant a criminal defendant's request for an adjournment to secure the testimony of a witness will necessarily always pass constitutional muster.  As the court stated in *Mackey v. Dutton,* 217 F.3d 399, 408 (6th Cir. 2000):

> When the denial of a continuance forms a basis of a petition for writ of habeas corpus, not only must there have been an abuse of discretion, but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process . . .  We have considered the following factors in determining whether an accused was deprived of his right to due process by a denial of a motion for continuance:  the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

*Id.* (internal citations omitted).

An evaluation of these factors reveals that the trial court properly and constitutionally exercised its discretion when it decided to adhere to Michigan's notice-of-alibi requirements and not to *sua sponte* grant a continuance in this case.

Petitioner's trial started on May 7, 2002.  It is undisputed that Petitioner never filed a Notice of Alibi Witness.[1]    It is further undisputed that   Reanta Carter, Petitioner's

---

[1]  Michigan, by statute requires that a defendant file a notice of alibi witness at least ten days before trial.  M.C.L. § 768.20(1) provides:

> If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, or at such other time as the court directs, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. The notice shall contain, as particularly as is known to the defendant or the defendant's attorney, the names of witnesses to be called in behalf of the

8

proposed alibi witness, was never identified as an alibi witness until the morning of the second day of trial, May 8, 2002. Although his name was listed on Petitioner's May 1, 2002 witness list, there was no indication on that list that Carter would be called as an alibi witness. Furthermore, Carter was only listed on the witness list by name; no address or phone number was given other than to indicate that Carter lived in "Ohio."

The only indication ever given about any possibility of any alibi witnesses was at a hearing that was held on defense counsel's pretrial motion for leave to hire a private investigator on January 31, 2002, more than four months prior to trial. In presenting that motion to the trial court, defense counsel indicated that he wanted to hire a private investigator "to go out and talk to at least six witnesses that I've been made aware of and they would be testifying as to the whereabouts of the Defendant at the time of these incidences." (1/31/02, Mot. Tr. at 4-5.) However, at no time during the motion hearing did defense counsel mention Reanta Carter or identify any of the witnesses he wanted the investigator to interview. The trial court granted defense counsel's request and appointed Michael Martin to locate the witnesses that defense counsel designated. *Id.* at 5. However, despite Mr. Martin's efforts, he was unable to locate and produce these alibi witnesses prior to trial. (5/8/02, Mot. Tr. at 25). It was not until some point in time immediately prior to the start of the second day of trial that Reanta Carter was located and

---

defendant to establish that defense. The defendant's notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense.

*Id.* The trial court has the discretion to exclude alibi testimony when the defendant violates the notice provisions of M.C.L. § 768.20. *See* M.C.L. § 768.21; *People v. Travis*, 443 Mich. 668, 679; 505 N.W.2d 563 (1993).

arrived in court to testify as a witness for Petitioner.  *Id.* at 11-18.  The trial court heard

testimony from Mr. Carter outside the presence of the jury. *Id.*

On direct examination by defense counsel, Carter equivocated.  Carter first testified

that he and his wife *came* to Detroit in *January* of 2001 and that Petitioner asked to ride

back to Loraine, Ohio with them.  (5/8/02 Tr., p. 11-12)  But, later during direct examination,

he said that he *left* Detroit "*probably two days after Christmas.*"  *Id.* at 12.  He then stated

that he did not know the exact date that he and Petitioner left to return to Ohio, though he

thought it was "a couple of days" after Christmas.  *Id.*   Carter said that Petitioner stayed

with him and his wife for "about four weeks" and that he left Loraine "sometime in late

January."  *Id.* at 13.

Following oral argument on the issue of whether the jury should be permitted to hear

Mr. Carter's testimony, the court denied Petitioner's request for the admission of the alibi

testimony:

> If timely notice is not filed, most states require that the alibi notice be
> excluded within the discretion of the Court.  I see no good cause shown here.
> The defendant [has] not established to the satisfaction of this court the
> witnesses or witnesses to be called to justify a twelfth-hour introduction of an
> alibi defense to the detriment and prejudice of the People.  And I think [the]
> conclusion of [no] alibi evidence in this case is mandated by our Michigan
> statute.

(5/8/02, Mot. Tr. at 33).  The Court finds that habeas relief is not warranted on this claim

for the following reasons.

First, although the trial court acknowledged that it had discretion to grant a

continuance in this matter, Petitioner never moved for an adjournment.   (5/8/02, Tr. at 29).

Therefore, the trial court could not have abused its discretion in denying a continuance to

10

call alibi witnesses, i.e., Reanta Carter, to testify because there was no request to arbitrarily reject.

Second, Petitioner had the opportunity to demonstrate his theory of the case -- actual innocence -- by testifying himself that he was with his cousin Reanta Carter at the time when Dodson and Hailey were robbed. (5/8/02, Tr. at 77-80). The jury also received an alibi defense instruction. (5/8/02, Tr. at 136). Therefore, he presented to the jury the alibi defense he sought to demonstrate through the testimony of Reanta Carter.

Third, the trial court found that Petitioner was not diligent in assisting his attorney in procuring the presence and testimony of his alibi witnesses. This is especially true of Reanta Carter, who is a relative of Petitioner. In declining to allow Mr. Carter to testify as Petitioner's alibi witness in the jury trial, the trial court found that the failure to file a timely notice of alibi was not attributable to defense counsel. *Id.* at 33-35. The trial court determined that Petitioner failed to provide his attorney with sufficient information to locate the alibi witnesses, and that counsel exercised diligence by hiring a private investigator to attempt to locate the witnesses:

> Well, Mr. Taratuta, I want to make it abundantly clear for the record that I perceive this as no fault of yours. If a client doesn't provide you with some specificity so you can do your job. I mean, you go beyond what most lawyers do. You go out and hire apparently, a private investigator.
>
> *   *   *
>
> Now, we're on the second day in the middle of trial, and you still don't have any specificity to offer this Court regarding the identities of these people. You have names, alleged names, but nothing more than that. You told us they were unlikely to appear.
>
> This morning, you seem surprise[d] by this late breaking information, and this case is half over. So I want to make it perfectly clear, I did not perceive this as any problem with this case or the presentment of an alibi defense. It's not attributable to the efforts of defense counsel. I think you've taken

11

> extraordinary measures under the circumstances, Mr. Taratuta, to do what
> you could do.  I attribute this problem to a lack of cooperation on behalf of
> your client.

*Id.*

Finally, comparing the strength of the evidence against Petitioner with the quality of Mr. Carter's expected testimony, the degree to which Mr. Carter's expected testimony would be favorable to Petitioner's case is minimal.  Both Dodson and Hailey separately identified Petitioner as the individual who robbed them.  (5/7/02, Tr. at 102-03, 121-22).[2] These two eyewitnesses gave a good description of Petitioner to police within hours of the crime, and then two months later, both identified him in a photo line-up.  They each subsequently identified him in person at the preliminary examination.  Eyewitness testimony of the crime provides strong evidence of guilt.  *See United States v. Williams*, 9 Fed. Appx. 679, 680 (9th Cir. 2001); *Earhart v. Konteh*, 2007 WL 2942307 at *11 (S.D. Ohio 2007). By contrast, Mr. Carter's testimony as to when he took Petitioner to Ohio was equivocal. He first gave conflicting dates as to when he came to Detroit and when he left, and ultimately admitted that he was uncertain of the date when he left with Petitioner to return to Ohio.  His testimony that Petitioner stayed with him in Ohio for "about four weeks" until "sometime in late January" similarly does not establish Petitioner's absence from Detroit on the date of the crime, January 4, 2001.

For these reasons, the Court does not find that the state trial court's decision to adhere to the Michigan Notice of Alibi Statute requirements and preclude Petitioner from

---

[2] Petitioner was driving a vehicle with a passenger when he drove in front of Dodson and Hailey, cutting them off, as they were walking.  The testimony is that Petitioner jumped out of the car with a shot gun pointed at Dodson and Hailey and demanded their coats.

presenting his alibi witness at trial was so arbitrary and fundamentally unfair that it violates constitutional principles of due process. Thus, the Court concludes that Petitioner's first claim presents no issue upon which habeas corpus relief may be granted.

## 2. Ineffective Assistance of Counsel

Petitioner also claims that he received ineffective assistance of counsel due to his trial attorney's failure to file a timely notice of alibi in compliance with the Michigan statute.

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there

13

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

In this case, Petitioner has failed to show that the trial court's finding that the failure to timely locate and secure the appearance of the alibi witnesses was attributable to Petitioner rather than his attorney was clearly erroneous or contrary to, or an unreasonable application of, Supreme Court precedent. As set forth above, Petitioner failed to provide his attorney with sufficient information to locate the alibi witnesses, i.e., Reanta Carter. Petitioner's lack of cooperation motivated defense counsel to ask the court for a private investigator to be appointed in an effort to find these witnesses; and the court granted defense counsel's request. (1/31/02, Tr. at 4-5). Since the statutory notice of alibi requires not only a statement of intent to present an alibi defense but also requires the identification of the witnesses who will testify to establish that defense, and Petitioner's counsel being unable to identify alibi witnesses due to the non-cooperation of his client, Petitioner cannot show that his attorney was ineffective in failing to file a notice of alibi.

Furthermore, even if the Court were to find counsel's conduct to have been deficient, Petitioner cannot satisfy the "prejudice" prong of the *Strickland* test -- he cannot show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." As set forth above, comparing the strength

14

of the evidence against Petitioner with the quality of Mr. Carter's expected testimony, the degree to which Mr. Carter's expected testimony would be favorable to Petitioner's case is minimal.  Eyewitness testimony of the victims identifying Petitioner as the perpetrator of the crime was unequivocal.  By stark contrast, Mr. Carter's proposed testimony as to Petitioner being elsewhere on the date and at the time of the crime was inconclusive.  Furthermore, the jury heard Petitioner's own alibi testimony.  The jury was also given an alibi instruction.  Considering all of these circumstances, it cannot be said that if Petitioner's counsel had timely filed a notice of alibi identifying Reanta Carter as an alibi witness that the outcome of the trial would have been different.

Therefore, the Court concludes that Petitioner has failed to establish that he was afforded ineffective assistance of counsel due to his attorney's failure to file a notice of alibi.

## B.  Appointment of Expert Witness

Petitioner next asserts that the trial court erred in denying Petitioner's request for the appointment of an expert to testify about the inaccuracies of eyewitness identification in an effort to discredit the testimony of Dodson and Hailey. The Michigan Court of Appeals considered and rejected this claim as follows:

> Defendant's cursory arguments at the motion hearing that because the eyewitness testimony was the only evidence of the alleged crime, an expert was needed, did not suffice to show either that there was a reasonable probability that his desired expert would have been of assistance or that without the expert, defendant would have been denied a fundamentally fair trial.  Thus, we find no error.

*May*, 2004 WL 737491 at *2-3.

Petitioner has identified no clearly established federal law as determined by the Supreme Court which entitles him to any independent experts as necessary to obtain relief

15

under § 2254(d)(1). The only case that is arguably on point is *Ake v. Oklahoma,* 470 U.S. 77 (1985). The Supreme Court's holding in *Ake,* however, was limited:

> We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation.

*Ake v. Oklahoma,* 470 U.S. at 83. The *Ake* Court did not discuss a defendant's entitlement to other court-appointed experts outside the context of an insanity defense. Subsequent to *Ake*, the Supreme Court has explicitly declined to answer this question. *Caldwell v. Mississippi,* 472 U.S. 320, 323, n. 1 (1985).

As the *Ake* Court explained, a criminal defendant is not entitled to whatever expert assistance he desires, but only access to the "basic tools of an adequate defense" so that he has "an adequate opportunity to present [his] claims fairly within the adversary system." *Ake,* 470 U.S. at 77. (internal quotations omitted). In Petitioner's case, counsel's cross-examination provided Petitioner "ample opportunity to show he was a victim of misidentification." *United States v. Rodriguez-Felix,* 450 F.3d 1117, 1128 (10th Cir. 2006); see also *United States v. Brewer,* 783 F.2d 841, 843 (9th Cir. 1986). Accordingly, the Court concludes that Petitioner is not entitled to relief on this claim.

## C.  Prosecutorial Misconduct & Procedural Default

Petitioner contends that the prosecution engaged in misconduct in two respects: (1) by questioning Petitioner regarding his prior conviction of receiving and concealing stolen property; and (2) by asking Petitioner to comment on the prosecution witnesses' veracity. Before addressing the merits of Petitioner's claim the Michigan Court of Appeals

16

acknowledged the following:

> Counsel did not object to the alleged errors at trial. Thus, our review of these matters is precluded "unless an instruction could not have cured the prejudicial effect or the failure to consider the issue would result in a miscarriage of justice." *People v. Wells,* 238 Mich. App. 383, 390; 605 N.W.2d 374 (1999), citing *People v. Stanaway,* 446 Mich. 643, 687; 521 N.W.2d 557 (1994). In other words, because defense counsel failed to object to the perceived misconduct, we cannot review it unless the prejudicial effect of the remark was so great that it could not have been cured by an appropriate instruction. *People v. Duncan,* 402 Mich. 1, 15-16; 260 N.W.2d 58 (1977) (citations omitted).

*May*, 2004 WL 737491 at *3.

Therefore, the Court first recognizes that Petitioner is in procedural default relative to his prosecutorial misconduct claim. In this case, the last state court to issue a reasoned opinion addressing Petitioner's prosecutorial misconduct claim, held that the claim was not preserved for review because defense counsel failed to place an objection on the record at trial regarding the prosecutor's alleged conduct. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner's prosecutorial misconduct evidence claim, therefore, is procedurally defaulted. The Court, however, need not address the procedural default issue here.

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Thus, while the procedural default

issue would ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999)(internal citations omitted); see also *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Forensic v. Birkett*, 451 F.Supp.2d 874, 887 (E.D. Mich. 2006). The Court deems it more efficient in this case to proceed directly to the merits of Petitioner's claim.

The Michigan Court of Appeals addressed the prosecutorial misconduct issue as follows:

> Defendant admitted to the conviction on direct examination. On cross-examination, the prosecutor asked whether the conviction involved a car, and defendant answered that it did. Although defendant is correct that a prosecutor may not "interrogate the defendant regarding the collateral facts comprising [a] prior conviction" to which defendant has admitted on direct examination the rule applies only where there has been a proper objection. See *People v. Johnson,* 54 Mich. App. 678, 681; 221 N.W.2d 452 (1974). We do not find this error so egregious that it could not have been cured with an objection and a curative instruction.

> Defendant also contends that the prosecutor wrongly asked defendant to comment on the prosecution's witnesses' veracity. We agree. Because the credibility of witnesses is within the purview of the jury, one witness's opinion of another's credibility is irrelevant and improper. *People v. Buckey,* 424 Mich.1, 17; 378 N.W.2d 432 (1985). Having found that the prosecutor's remarks were irrelevant and improper, we turn to MCL 769.26 which states:

> "No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the injury, or the improper admission or rejection of evidence, or for error as to any pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

> Thus, appellate courts should not reverse a conviction unless the error was prejudicial. *People v. Mateo,* 453 Mich. 203, 210; 551 N.W.2d 891 (1996); *People v. Robinson,* 368 Mich. 551, 562; 194 N.W.2d 709 (1972)  .  .  . Taking into consideration the evidence offered against the defendant, we do not find that the comments were so egregious as to justify reversal.

*May*, 2004 WL 737491 at *4.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for a new trial and habeas relief only if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986), quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 1974). "To constitute a denial of due process, the misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Byrd v. Collins,* 209 F.3d 486, 529-30 (6th Cir. 2000), quoting *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997). The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006). If they were , the court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. Flagrancy depends on four factors: (1) whether the actions "intended to mislead the jury or prejudice the defendant;" (2) whether the actions were isolated or represent a pervasive course of conduct; (3) whether the acts represent a deliberate attempt to affect the outcome of the case; and (4) the overall strength of the case. *Millender,* 376 F.3d at 528. The Court must focus on the "fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d at 964.

The first question to consider is whether the prosecutor's questioning of Petitioner at trial was designed to attack his character and place him in a bad light in front of the jury. The Court finds that Petitioner has not shown that conduct to be improper because the record reflects that the Petitioner admitted on direct examination that he had been convicted of receiving and concealing stolen goods. The prosecutor made only one inquiry

19

about what the stolen and concealed property was; and Petitioner responded that it was

an automobile.  (5/8/02, Tr. at 89).  The Court does not find that the prosecutor's single

question at all meets the threshold of prosecutorial misconduct.

Petitioner also contends that the prosecutor wrongly asked him  to comment on the

prosecution's witnesses' veracity. The Court agrees that such questioning was improper

for the same reasons cited by the Michigan Court of Appeals.  However, the Court also

finds that the error is harmless.  The testimony at issue is as follows:

Q:  You didn't hear him say that it was you and identified you as the man in
the checked as opposed to the striped suit, agreed, you didn't hear that?

A:  As when he came to my house.

Q:  No.  When he was out i[n] back of the address on Beniteau, you didn't
hear him say that? [referring to Agent Jerome Sharp]

A: I can't recall him saying that.

Q: That's fine.  But if he did say that, he would be making it up, is that fair?

A: Yes sir.

*    *    *

Q: So the only thing he's lying about is about the name "Man Man", is that
fair? [referring to Officer Richard Bugsy]

A: Yes, sir.

*    *    *

Q: Now, you heard Mr. Dotson and Mr. Haley testify, correct?

A: Yes, sir.

Q: Are they not telling the truth as well as?

A: Yes, sir.

20

Q: They're lying on you?

A: Yes, sir.

*   *   *

Q: Mr. May, we can agree then that Mr. Bugsy is lying on you, correct about, the nickname?

A: Yes, sir.

Q: We can also agree that Mr. Dotson and Mr. Haley are lying on you as well, correct?

A: Yes, sir.

(5/8/02, Tr. at 90, 92, 94-95)

Under the harmless error rule any error must raise grave doubt about whether trial error had a substantial and injurious effect or influence on a jury verdict. *O'Neil v. McAnich,* 513 U.S. 432, 438-39 (1995); *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993). To meet this standard, there must be more than the "reasonable possibility" that the error contributed to the jury's verdict. *Mitzel v. Tate,* 267 F.3d 524, 534 (6th Cir. 2001). "While the burden of persuasion on harmless error review falls on a petitioner, he need not prove that the error was outcome-determinative; instead he must merely remove any assurances that the error did not affect the outcome." *Ruimveld v. Birkett,* 404 F.3d 1006, 1014 (6th Cir. 2005); *Beck v. Haik,* 377 F.3d 624, 635 (6th Cir. 2004). Upon review of the above testimony coupled with the gravity of evidence implicating Petitioner in this armed robbery, the Court does not find the prosecutor's questioning rose to the level of prejudicial error which would warrant a reversal. Habeas relief is, therefore, denied.

### D.  Certificate of Appealability & *In Forma Pauperis*

21

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See Id.* at 90 (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,' the district judge is, at that point, often best able to determine whether to issue the COA.")

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must "show [ ] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Therefore, the court denies a certificate of appealability.

Lastly, the court concludes that Petitioner should not be granted leave to proceed on appeal *in forma pauperis* as any appeal of the court's decision would be frivolous. See Fed. R. App. P. 24(a). Accordingly, the court will also deny leave to proceed on appeal *in forma pauperis.*

## IV. CONCLUSION

22

Petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly,

IT IS ORDERED that the "Petitioner for Writ of Habeas Corpus" [Dkt. #1] is DENIED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  February 11, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 11, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

23